

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Coke Stevenson
Governor of Texas
Austin, Texas

Dear Governor Stevenson:

Opinion No. 0-5034
Re: Would the proposed bill
regulating the sale of
insecticides and fungicides
be constitutional if passed
in its present form, a copy
of said bill being hereto
attached.

With your letter of January 14, 1943, you
submit a copy of a proposed bill which for convenience
we designate an Agricultural Insecticides Bill, and request
that we advise you if this bill is constitutional in its
present form.

We have carefully considered this proposed
bill and our views are as hereinafter expressed.

The subject covered by this proposed bill is
not new in Federal and State legislation. The Federal Law
is now embodied in U. S. C. A., Chapter 6 of Title 7, Agri-
culture, Vol. 7, designated in the Federal Act as the "Insec-
ticide Act". Federal legislation upon the subject dates
back to April 26, 1910, and several states have heretofore
enacted similar legislation.

It cannot be questioned that the public health,
public morals, and general public welfare may be preserved
under the police powers vested in the State. Ex parte Vaughan,
246 S. W. 353, and the authorities cited therein. It is true
that legislation under the police powers of the State must

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

not be arbitrary, unreasonable or oppressive, yet all property within the jurisdiction of the State is held subject to reasonable regulations so that it may not be used to the detriment of the equal rights of others. R. C. L. Vol. 6, p. 193, and numerous authorities there cited. It has also been held to be a valid regulation of business under the police powers of the State to prohibit fraud, deceit and imposition. 12 C. J. 920; 6 R. C. L. 208. In the case of Cofman v. Osterhous, State Dairy Comm., 168 N. W. 826; 18 A. L. R. 210, the court in passing upon the constitutionality of an act regulating the dairy interest, licensing, and authorizing the withholding of license under specified conditions said:

> "The police power of the State is not limited to the mere regulation of affairs to preserve good order, public health and safety. The prevention of fraud and deceit, cheating and imposition, is equally within the power, and a state may prescribe all such regulations as in its judgment will secure, or tend to secure, the people against the consequences of fraud."

Also to the same general effect 12 C. J. 920; 6 R. C. L. 208.

In the interest of public health, public morals and public welfare statutes have been upheld in nearly every state of the Union regulating and licensing various businesses and professions, governing marketing of food products; controlling the manufacture and sale of drugs, meat, milk, butter, cheese, cereals, medicines, beverages, sprays, fertilizer, germicides and food products of nearly every variety consumed by man and animals. Gregory v. Heeks, Director of the Department of Agriculture, 238 P. 785.

Passing now to a more detailed and specific consideration of this bill with the foregoing comments as a preface, we think it clear from the caption of the bill that it is designed as a regulatory measure to regulate the sale of agricultural insecticides and fungicides, prohibiting their adulteration, misbranding, or misrepresentation, for the collection and analysis of samples, expenses of enforcement of the law, fixing penalties for its violation, and for other purposes.

Clearly it would be presumed that the Legislature, if it passed such an act, would intend thereby to regulate not only the sale of agricultural insecticides and fungicides, but likewise to protect the large and valuable agricultural, horticultural and ranching interests of the State of Texas against fraud, imposition and misrepresentation as to the efficiency of such agricultural insecticides and fungicides for the extermination of germs, insects and fungi diseases.

There are certain defects in this bill which do not go to its constitutionality, which we take the liberty to point out. We believe the caption is not as complete as it should be. The following caption is suggested, which we think is more comprehensive than the caption in the bill:

"A BILL TO BE ENTITLED

"AN ACT to regulate the sale of insecticides, fungicides; providing for the enforcement of this Act and the analyses of such insecticides and fungicides; and the recording of the formulas of same; providing for the collection of a tax and the disposition of same; providing for the issuance of certificates and the registration and revocation of same; providing for the obtaining of samples; forbidding adulteration of commodities, the sale of which is hereby regulated; providing for the promulgation of rules consistent with this Act; defining certain of the terms of this Act; providing for seizure in certain instances; providing for an appropriation and a saving clause; fixing penalties for the violation of this Act; providing for the right of seizure and disposition thereof; and declaring an emergency."

We believe a more workable provision would be that a complaint for search and seizure provided for in Section 7 be filed by the Commissioner of Agriculture, the chief clerk, when acting for the Commissioner, since the law does not provide for a deputy commissioner of agriculture, but vests in the chief clerk the duties of the Commissioner of Agriculture in his absence or inability to act,

with the further provision that such complaint may be made by any employee of the Department of Agriculture duly authorized by the Commissioner of Agriculture or the chief clerk serving under the law instead of the Commissioner of Agriculture. That portion of Section 7, dealing with search, seizure, and forfeiture, is so vague, indefinite, and uncertain as to raise serious doubts as to the constitutionality of this section, and perhaps should be redrafted to clarify it. Where there is a conviction, forfeiture of the illegal or unlawful insecticide or fungicide automatically follows. In such an instance, we think the justice or county court in which the conviction has been had has the power and jurisdiction to deal with the insecticide or fungicide so forfeited. If however a forfeiture is sought, independent of a conviction, as the act seems to provide, then the District Court only would have jurisdiction to deal with such a forfeiture. In such case the District Court acts upon proper application by the district or county attorney in a proceeding brought for that purpose in which all parties are accorded a trial after due notice. We believe that any departure from this, except in cases where there has been a conviction in the justice or county court, would be illegal.

We doubt that the Commissioner of Agriculture can be vested with the broad discretionary power conferred upon him by the last sentence of Section 7, to the effect that he may in his discretion release the insecticide or fungicide forfeited or condemned, upon the payment of the required tax and all costs and expenses incurred in connection with such proceeding.

Except as to our comments upon Section 7, of this act, we see no serious constitutional objection to it.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By    s/s  L. P. Lollar
Assistant

APPROVED FEB 18, 1943

s/s Gerald C. Mann
ATTORNEY GENERAL OF TEXAS
L: ASM
MOCURE

APPROVED
Opinion Committee

By: s/s B B
Chairman